**Kerry Dwayne TATE, Appellant,**

v.

**The STATE of Texas, State.**

**No. 02–88–214–CR.**

Court of Appeals of Texas, Fort Worth.

July 25, 1990.

Jennings, Dies, Turner, Allen & Moore, Jess N. Turner, III, Graham, for appellant.

John A. Neal, Dist. Atty., Graham, for the State.

Before WEAVER, C.J., and FARRIS, J.

## OPINION

WEAVER, Chief Justice.

Appellant, Kerry Dwayne Tate, was convicted by a jury of the offense of delivery of a controlled substance, to-wit: metham-

phetamine of less than twenty-eight grams. *See* former TEX.REV.CIV.STAT.ANN. art. 4476–15, secs. 4.03(a) & (b) and 4.02(b)(4) & (6) (Vernon Supp.1989) (now codified at TEX. HEALTH & SAFETY CODE ANN. secs. 481.112(a) & (b) and 481.102(4) & (6) (Vernon Pamph.1990)). Appellant pled true to two enhancement allegations, and the jury assessed punishment at forty-five years confinement in the Texas Department of Corrections.[1] *See* TEX.PENAL CODE ANN. sec. 12.42(d) (Vernon Supp. 1990).

Appellant alleges error in the court's charge to the jury at the guilt/innocence stage, and at the punishment stage of the trial. We sustain appellant's first point of error and reverse and remand for a new trial.

Although the basic underlying facts of this offense are quite simple, the two primary witnesses, Officer James Brumley, an undercover narcotics officer working for the Department of Public Safety in Graham, Texas, and appellant, presented two different versions of the details of the incident which resulted in appellant's arrest.

Officer Brumley testified he had received information from a confidential informant that appellant was selling methamphetamine in Young County. The officer arranged with his informant to meet with appellant to purchase methamphetamine on June 5, 1987. On that date, when Officer Brumley parked his vehicle at the agreed-upon place, a supermarket parking lot, the informant got out of a pickup truck, walked over to the officer's car, and handed him the methamphetamine. Officer Brumley (in his undercover capacity) then got out of his vehicle and walked over to the driver's side of the pickup in which appellant was seated in the passenger's seat. The officer informed appellant that the weight of the drugs was not correct and, at appellant's request, Officer Brumley handed the methamphetamine to appellant. Appellant took the drugs in his hands and said, "It's compact, it's all there, I will guarantee it." Officer Brumley then

1. Now the Texas Department of Criminal Justice, Institutional Division.

advised appellant he would not pay the asking price of $250.00, and appellant agreed to take $225. Appellant returned the drugs to the officer. After Officer Brumley gave appellant $230.00, appellant picked up the money off the seat of the pickup, stuck it into his pocket, took $5.00 out of his billfold, and returned this change to Officer Brumley. When the transaction had been completed and the officer started to leave, appellant remarked, "They will speed their heads off."

Appellant testified he and his friend Sam Snyder (the confidential informant, who did not testify at trial) had gone to the supermarket parking lot to meet a friend of Snyder's father. Snyder was driving his pickup truck and when they pulled into the parking lot, Snyder said, "Well, there he is," whereupon Snyder parked the truck near the other man's car. Snyder got out of the truck and talked to the occupant of the other car. At this time, appellant was seated in the passenger's side of Snyder's truck, and appellant got out of the vehicle to talk with a female friend who had driven up in her own car. Appellant testified he saw money changing hands between Snyder and the occupant of the other car. When appellant returned to Snyder's pickup truck, he saw some money laying on the seat near Snyder's leg, and Snyder picked up the money. After appellant had gotten back into the pickup truck, the other man came over to the truck and questioned appellant as to whether he would take a lower price for the stuff. Appellant testified he told this other man he had no idea what the man was talking about and the other man then turned and walked away.

In his first point of error, appellant complains that at the guilt/innocence stage of the trial the court included in the abstract portion of the jury charge a definition of the law of parties. *See* TEX.PENAL CODE ANN. secs. 7.01 and 7.02 (Vernon 1974). The pertinent portion of the indictment alleges appellant "did then and there intentionally and knowingly deliver to James Brumley a controlled substance, namely: methamphetamine of less than twenty-eight grams by actually transferring said controlled substance." The

charge instructed the jury that a person commits an offense if he intentionally or knowingly delivers a controlled substance, and the term "deliver" was defined as "the actual transfer from one person to another of a controlled substance, whether or not there is an agency relationship." The abstract portion of the jury charge included an instruction setting out the law of parties, as stated in sections 7.01 and 7.02 of the Penal Code. The full text of the *application* paragraph provides:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 5th day of June, 1987 in Young County, Texas, the defendant, Kerry Dwayne Tate, did intentionally or knowingly deliver, by actual transfer, a controlled substance, to wit, methamphetamine, of less than twenty-eight grams, as alleged in the indictment, then you will find the defendant guilty as charged.
>
> Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant.

As is evident, the application paragraph does not apply the law of parties to the facts of the case.

Prior to the submission of the charge to the jury, appellant's counsel objected to the inclusion of any instruction by the trial court on the law of parties, on the grounds that: 1) the theory was not pled in the indictment; 2) there was no evidence of a conspiracy or an agreement to act between appellant and the third-party informant either before or during the actual delivery; and 3) the instruction is confusing because it would permit the jury to determine the third-party informant was acting on behalf of either appellant or on behalf of the undercover police officer. Appellant did not object to the failure of the application paragraph of the charge to apply the law of parties to the facts of the case.

■ In his discussion under point of error one, appellant advances several arguments. Regarding his contention that an instruction on the law of parties was improper because the indictment did not al-

lege appellant committed this offense as a party, it is well settled that if the evidence supports a charge on the law of parties, the court may charge on the law of parties even though there is no such allegation in the indictment. *LeDuc v. State,* 593 S.W.2d 678, 685 (Tex.Crim.App. [Panel Op.] 1979); *Pitts v. State,* 569 S.W.2d 898, 900 (Tex.Crim.App.1978) (en banc). This principle has been applied to the offense of actual delivery of a controlled substance. *Conaway v. State,* 738 S.W.2d 692, 694 (Tex. Crim.App.1987); *see also Nevarez v. State,* 767 S.W.2d 766, 768 (Tex.Crim.App.1989).

Appellant next asserts there was no evidence that a third person (the informant, Snyder) was committing any offense; therefore, the evidence did not support a charge on the law of parties. The State does not respond to this particular contention of appellant's.

The law of parties is set out in the Texas Penal Code as follows:

**Section 7.01. Parties to Offenses**

(a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

(b) Each party to an offense may be charged with commission of the offense.

(c) All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice.

**Section 7.02. Criminal Responsibility for Conduct of Another**

(a) A person is criminally responsible for an offense committed by the conduct of another if:

. . . .

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. . . .

TEX.PENAL CODE ANN. secs. 7.01 and 7.02(a)(2).

In the instant case, immediately following the application paragraph in the jury charge, the jury was instructed as follows:

All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

In *McCuin v. State,* 505 S.W.2d 827 (Tex. Crim.App.1974), the court established definite guidelines for determining when a cause may be submitted to the jury on the law of parties:

Where the evidence introduced upon the trial of the cause shows the active participation in the offense by two or more persons, the trial court should first remove from consideration the acts and conduct of the non-defendant actor. Then, if the evidence of the conduct of the defendant then on trial would be sufficient, in and of itself, to sustain the conviction, no submission of the law of principals is required. . . .

On the other hand, if the evidence introduced upon the trial of the cause shows, or raises an issue, that the conduct of the defendant then upon trial is not sufficient, in and of itself, to sustain a conviction, the State's case rests upon the law of principals and is dependent, at least in part, upon the conduct of another. In such a case, the law of principals must be submitted and made applicable to the facts of the case.

*Id.* at 830. The *McCuin* test is still a viable means for determining when a cause should be submitted to the jury on the law of parties. *Brown v. State,* 716 S.W.2d 939, 944 (Tex.Crim.App.1986).

In support of his theory that no instruction on the law of parties was appropriate and he could not be convicted as a party to the instant offense because the informant was not committing a crime, appellant cites *Smith v. State*, 396 S.W.2d 876 (Tex.Crim. App.1965). The defendant in *Smith* purchased narcotics from a third party, at the request of an undercover narcotics agent. The defendant was then prosecuted for the offense of unlawful sale of the narcotics, and requested a jury instruction worded almost identically to the ultimate holding in the case, which was:

> The rule ... is that "If an accused is in no way interested in behalf of the seller but acts only as an agent of the prosecutor he is not guilty of making a sale." The jury should have been given the requested charge or one of like import, and the Court's failure to grant his request constitutes reversible error.

*Id.* at 877–78, citing *Durham v. State*, 162 Tex.Crim. 25, 280 S.W.2d 737, 738–39 (1955). The case was reversed and remanded. *Smith*, 396 S.W.2d at 878. We recognize that the facts in *Smith* are not identical to those in the instant case because in *Smith* the informant himself was being prosecuted—the case did not involve the law of parties. However, *Smith* lends support to appellant's theory that because the informant, Snyder, was acting as an agent of the State, Snyder could not be found guilty of any offense; therefore, appellant could not be prosecuted under sections 7.01 and 7.02 as a party to the commission of the nonoffense.

At this point it is necessary to delve into the history of the law of "parties." The 1974 Penal Code redefined the existing law of principals and accomplices by providing: "All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice." TEX.PENAL CODE ANN. sec. 7.01(c).

Prior to the 1974 revision, the Penal Code specifically enumerated who was a "principal," or an "accomplice." *See* TEX. PENAL CODE title 3, arts. 65–82 (1925),

*repealed by* Penal Code, ch. 399, sec. 3(a), 1973 Tex.Gen.Laws 883, 991 (now recodified at TEX.PENAL CODE ANN. ch. 7 (Vernon 1974)). To warrant a conviction of an "accomplice" under the pre–1974 Penal Code, the State had to "prove the commission of the offense by the principal 'to the same certainty as if the principal were on trial, and therefore beyond a reasonable doubt.'" *Forbes v. State*, 513 S.W.2d 72, 79 (Tex.Crim.App.1974), *cert. denied*, 420 U.S. 910, 95 S.Ct. 830, 42 L.Ed.2d 840 (1975), citing *Aston v. State*, 136 Tex.Crim. 12, 122 S.W.2d 1073, 1074 (1938). Several cases have held that if the State seeks to prove a defendant guilty as a party pursuant to sections 7.01 and 7.02 of the post–1974 Penal Code, the State is required to prove the guilt of the primary actor. *See Williams v. State*, 760 S.W.2d 292, 295 (Tex.App.—Texarkana 1988, pet. ref'd); *Travis v. State*, 697 S.W.2d 786, 790 (Tex. App.—Dallas 1985, no pet.); *Meyers v. State*, 665 S.W.2d 590, 592 (Tex.App.—Corpus Christi 1984, pet. ref'd). We find these cases persuasive authority and hold in the case at bar that in order to convict appellant under the law of parties, the State had to prove conduct by the primary actor which constituted an offense, plus an act by the defendant done with the intent to promote or assist such conduct. *See Beier v. State*, 687 S.W.2d 2, 3 (Tex.Crim.App. 1985).

Focusing on the transaction between the informant, Snyder, and Officer Brumley, we note first that Officer Brumley committed no offense. "An officer does not become a party to a crime if he participates therein solely for the purpose of apprehending one engaged in crime and bringing him to justice." *Vela v. State*, 373 S.W.2d 505, 507 (Tex.Crim.App.1963). Accordingly, the State had to prove that Snyder, the only other participant to the transaction, could be held criminally responsible for his actions. In making this determination we find helpful those cases which address whether a participant is an accomplice to a crime. Although these cases generally are concerned with whether a person is an accomplice (and therefore the jury should be so instructed as a matter of law, and

should be instructed that the accomplice's testimony must be corroborated under TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979)), we find the rules stated therein apply to our present situation. The basis for our reasoning is that a person is not an accomplice if he cannot be prosecuted with the offense with which the accused is charged. *See Crank v. State,* 761 S.W.2d 328, 349 (Tex.Crim.App.1988). This is the same test which we must apply in ascertaining whether Snyder (the primary actor) can be held criminally responsible for his participation in the drug transaction.

In order to be an accomplice witness, there must be some evidence of an affirmative act on the witness' part to assist in the commission of the offense. *Kunkle v. State,* 771 S.W.2d 435, 440 (Tex.Crim.App.1986), *cert. denied,* —— U.S. ——, 109 S.Ct. 3259, 106 L.Ed.2d 604 (1989); *see Parr v. State,* 606 S.W.2d 928, 929 (Tex.Crim.App. [Panel Op.] 1980) (undercover volunteer reserve officer is not accomplice); *Burns v. State,* 473 S.W.2d 19, 20 (Tex.Crim.App.1971) (undercover agent—college student volunteer—is not an accomplice so long as he does not bring about the crime); *Gomez v. State,* 461 S.W.2d 422, 424–25 (Tex.Crim.App.1970) (undercover agent/informant is not accomplice provided he does not bring about the crime, but merely obtains evidence to be used against those engaged in the crime); *see also Varvaro v. State,* 772 S.W.2d 140, 142 (Tex.App.—Tyler 1988, pet. ref'd) (undercover officer was not an accomplice witness).

We conclude that although the informant, Snyder, did knowingly and intentionally deliver methamphetamine to Officer Brumley by actual transfer, Snyder cannot be held criminally responsible for that delivery because he was acting as an agent of Officer Brumley, who was acting in his official capacity. *See Smith,* 396 S.W.2d at 877–78. Therefore, because neither Snyder nor Officer Brumley is criminally responsible for his own conduct, the transfer of the methamphetamine between the informant and Officer Brumley was not an offense and appellant could not be convicted as a party to the transfer.

We find that the evidence introduced upon the trial of this cause does not show, or raise an issue, as to whether appellant acted with intent to promote or assist the commission of the instant offense, by soliciting, encouraging, directing, aiding, or attempting to aid another person to commit the offense of delivery of a controlled substance. Accordingly, the trial court should not have included in the jury charge an instruction regarding the law of parties.[2]

We must next determine whether the inclusion of the instruction on the law of parties was error "calculated to injure the rights of [the] defendant." TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981). In other words, appellant must have suffered some actual, not just theoretical, harm from the error. *See Almanza v. State,* 686 S.W.2d 157, 171–74 (Tex.Crim.App.1984) (opinion on reh'g). As stated by the court of criminal appeals:

> We now expressly find that, in the context of *Almanza,* supra, and Article 36.-19, supra, the presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction. Cases involving preserved charging error will be affirmed only if *no* harm has occurred. See *id.* at 171 ("In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.").

*Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986) (emphasis in original).

2. Appellant also advances the theory that the trial court's failure to apply the law of parties to the facts of the case (notwithstanding appellant's lack of objection on this ground in the trial court) constituted fundamental error and denied appellant a fair and impartial trial. In view of our ruling that the law of parties was inapplicable to this case, we need not address appellant's contention. *Compare Carruth v. State,* 762 S.W.2d 364, 368 (Tex.App.—Fort Worth 1988, no pet.) (if no objection at trial, appellate court must determine whether failure to apply the law of parties to the facts was so egregious as to deprive appellant of a fair and impartial trial).

The State asserts the evidence clearly supports appellant's guilt as a primary actor, therefore the charging error is harmless. In support of this position, the State relies upon *Mauldin v. State*, 628 S.W.2d 793, 796 (Tex.Crim.App. [Panel Op.] 1982), and *Brown*, 716 S.W.2d at 945–46. *See also Black v. State*, 723 S.W.2d 674, 675 and n. 2 (Tex.Crim.App.1986). We believe the current state of the law regarding application of the *Almanza* standard of harm to an appellant as a result of such jury charge error, was more clearly set out by the court of criminal appeals in the subsequent cases of *Johnson v. State*, 739 S.W.2d 299 (Tex.Crim.App.1987), and *Scott v. State*, 768 S.W.2d 308 (Tex.Crim.App. 1989).

In *Johnson*, the court extensively analyzed the harmless error test to be applied when an appellant objected at trial to the failure of the application paragraph to apply the law of parties to the facts of the case. *Johnson*, 739 S.W.2d at 300–05. The opinion acknowledged the line of cases (including *Mauldin*) which held that where the evidence has been found sufficient to sustain the conviction of the accused as a primary actor, the fact that the trial court gave abstract instructions on the law of parties has been deemed to be harmless. *Id.* at 304. The *Johnson* court then discussed the majority opinion in *Black*, 723 S.W.2d at 674. Because *Johnson* interprets the harmless error rule as it should be applied in the instant case, we feel it is important to quote the exact language of the opinion, as follows:

In footnote 2 of *Black v. State*, supra, the *Govan* [*v. State*, 682 S.W.2d 567 (Tex.Crim.App.1985)] test for harm was harmonized with our opinion in *Almanza*. *Judge Teague argued in dissent that so long as evidence raises the issue of guilt of the accused under the law of parties, it should be reversible error not to apply that law to the facts, irrespective of whether the evidence might also "clearly support" his conviction as a primary actor:*

"In the face of a timely and specific objection, such as the one interposed in this case, a showing of 'some harm' has been demonstrated because there is a logical possibility, supported by evidence, that the jury convicted [defendant] upon a theory of vicarious culpability without being expressly informed of the facts it must find before doing so. The rule in *Govan* precludes a finding of harm in such context." 723 S.W.2d at 683. Speaking for the majority in rejecting this "logical possibility" conception of "some harm" under *Almanza*, Judge Campbell opined that, on the contrary, it would be illogical to presume that, confronted by evidence an accused was the primary actor in commission of an offense, a jury would choose nevertheless to proceed upon a theory of parties simply because that theory also had some support in the evidence. Instead the Court advocated the kind of "examination of the entire record" called for in *Almanza*, supra, whereby:

" ... the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."

686 S.W.2d at 171. *Judge Campbell acknowledged that "if the record indicated some basis for rejecting the evidence of the [defendant's] guilt as a [primary actor,] i.e., if the State argued that [defendant] was guilty as a party or if there was conflicting evidence of [defendant's] guilt as a [primary actor,]"* then "some harm" could be predicated on the trial court's failure to apply the law of parties to the facts. To this extent, footnote 2 of *Black* suggests, *the simple inquiry whether the evidence "clearly supports" guilt of the accused as a primary actor would prove an inadequate gauge of harmfulness*, at least in the face of a timely and specific objection.

*Johnson*, 739 S.W.2d at 304–05 (emphasis added). The court in *Johnson* ultimately held:

Because the evidence raised an issue whether appellant was guilty under the law of parties as defined in section 7.02(a)(2), supra, we hold it was error for the trial judge to refuse appellant's request that the charge more explicitly apply the law of parties to the facts of this case. Moreover, *because that was the theory of prosecution best supported by the evidence and most fervently advanced before the jury in the State's final argument,* we hold this error precipitated at least "some harm" to appellant under *Almanza v. State,* supra, *irrespective of whether the evidence incidentally supported conviction of appellant as primary actor as well.* Cf. *Arline v. State,* 721 S.W.2d 348 (Tex.Cr. App.1986).

*Id.* (emphasis added) (footnote omitted).

In *Scott,* the court of criminal appeals stated:

*Johnson v. State,* 739 S.W.2d 299 (Tex. Cr.App.1987), decided after the Court of Appeals' decision in the instant case, is dispositive of the issue. There, in facts almost identical to those present here, the Court held that reversal was proper where the State's case relied upon the law of parties for conviction and, in light of a proper objection, the trial court failed to apply the law of parties to the facts. As in *Johnson,* supra, we are compelled to agree with the Court of Appeals and find that appellant has suffered "some harm" under *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1985).

*Scott,* 768 S.W.2d at 309–10.

We find the language of *Johnson* and *Scott* controlling regarding the harm test to be applied in the instant case. Accordingly, we must review the record in the case at bar and determine whether appellant has suffered some harm as a result of the inclusion of the instruction on the law of parties. The prosecutor discussed the law of parties with the jury as follows:

(1) *During voir dire:*

In the charge that you get that the judge gives you, which is part of the law, *you may get a charge on the law of the parties. The law of the parties is a theory that we have in our law here in Texas that says if someone helps or aids in the furtherance of a crime then they are as guilty as another.* And as an example, someone who kidnaps a child and another one secretes the child, well, the one that keeps that child in hiding is just as guilty as the one who snatched the child. That's what I mean. He furthers the crime. He helped. The fellow that drives the getaway car from the bank robbery or whatever is just as guilty as the guy that robs the bank. *That's what we call the law of the parties. And if the judge gives you that charge and says if you find that this defendant aided or furthered or directed in any way in this crime then you will find him guilty, you must find him guilty.* Is there anyone here that has a problem in any way? Is there anyone who has a question about it, about what I mean by the law of the parties and what your decision will be if the judge gives that to you in this charge? Anyone? Let the record reflect that no one has answered. [Emphasis added.]

(2) *During the rebuttal portion of the State's closing argument:*

It comes down to who you believe. Now, I ask you to consider the testimony of Officer Brumley and if you believe that he is deliberately lying to you I want you to let this man go. Let him walk out on the street again. That's what I want you to do if you believe Officer Brumley is lying to you. *There is in this charge a law of the parties.* This charge says that if a person—I believe Kerry Tate actually handed this to Officer Brumley. *The law of the parties that I explained to you on voir dire says that if you believe, even if you just believe that he was acting with intent to promote or assist in the commission of the offense, if he solicits, if he encourages, if he directs, or aids, if he makes change, if he goes ahead and encourages the deal, then you will find him guilty.* Now, it says mere

presence alone does not constitute one a party to an offense. [Emphasis added.]

As noted earlier, the informant, Snyder, did not testify at trial,[3] and we find there was some basis for the jury to reject the evidence of appellant's guilt as a primary actor since appellant's testimony on this issue directly conflicted with that of the only other witness to the transaction, Officer Brumley. Further, in both voir dire and closing argument the State emphasized that the jury could convict appellant under the law of parties. Lastly, as pointed out by appellant, the record reflects appellant had been tried before on this charge on two prior occasions; neither jury had been instructed on the law of parties, and each trial ended in a mistrial due to a hung jury.

We find the error of the trial court in including the law of parties in the jury charge precipitated at least "some harm" to appellant under *Almanza,* irrespective of whether the evidence incidentally supported the conviction of appellant as a primary actor as well. *See Johnson,* 739 S.W.2d at 305. Appellant's first point of error is sustained.

■ In his second point of error, appellant asserts the trial court erred in its charge on punishment in instructing the jury that appellant had been found guilty of *possession* of a controlled substance, rather than *delivery* of a controlled substance. Appellant argues this clerical error was fundamental error and denied him a fair and impartial trial. Appellant did not object at the punishment stage to this clerical error, and does not contend on appeal that the trial court submitted an incorrect range of punishment to the jury. In fact, the trial court did submit a correct range of punishment, and we find the clerical error in the jury charge did not rise to the level of egregious harm. *See Almanza,* 686 S.W.2d at 171. Appellant's second point of error is overruled.

**3.** Interestingly, during deliberations the jury sent out a note asking, inter alia, "Why was the

The judgment of the trial court is reversed and the cause is remanded for a new trial.

KELTNER, J., not participating in the decision.

connection Snyder not called in for a witness?"