

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-326-CR

JUAN MELECIO ESPARZA                                          APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Juan Melecio Esparza of murder and assessed his punishment at seventy-five years' confinement. The trial court sentenced him accordingly. In three points, Appellant argues that the trial court improperly admitted testimony of Esmeralda Diaz concerning found luggage and its contents, that the testimony was more prejudicial than probative, and that in

---

[1] _See_ Tex. R. App. P. 47.4.

the absence of the said testimony, the evidence is factually insufficient to show that Appellant intentionally and knowingly caused the death of Rebecca (Becky) Sosa. Because Appellant has not preserved error in the admission of evidence and does not otherwise challenge the factual sufficiency of the evidence, we affirm the trial court's judgment.

Becky Sosa and Appellant had a rocky relationship. Around September 2004, they began dating, and they quickly moved in together. In 2005, Becky's relatives began to notice bruises and bite marks on her body and became aware of Appellant's controlling and jealous behavior. They spoke to Becky about her leaving Appellant. On June 11, 2005, Josephine Coss, Becky's cousin, went to the home Becky and Appellant shared to see if they would attend a party that night with Becky's family in celebration of another cousin's high school graduation. Appellant said that he did not like Becky's "piece of shit family." Becky's cousin heard Appellant say that if Becky went to the party, he would kill her. Becky, however, did go to the party. She wore a blue jean dress with stripes and a pair of white shoes. When Becky arrived at the party, she told Coss that she "left that piece of shit" because her family comes first.

Later that night, Becky decided to go to her house to change shoes. Coss went with her. When they got to the house, Becky went into her bedroom, and

2

she and Appellant began to argue. Coss heard Appellant threaten Becky. He told Becky that if she left the house, something would happen to her.

Becky returned to the party and appeared to have a good time. Becky did ask her cousin, Julie Sosa, to take care of Becky's children, however, should anything happen to her. After the party, Becky drove Coss home. The two women lived a few houses apart on the same street and were very close.

On June 13, 2005, after not hearing from Becky on June 12, 2005, the day after the party, receiving no answer at her door, and seeing no sign of her car, Coss filed a missing person's report. That same day, she entered Becky's home through an open window. Coss found Becky's body in her bedroom. Becky's body was clothed in the same blue jean dress that she had worn to the party earlier that weekend. Her body showed bruise marks from an apparent beating, and she had a bullet wound in her head. No gun was located in the home, and Becky's car was gone. Appellant was gone, and pictures of Becky, her children, and Appellant were also missing.

The police received an anonymous tip that Appellant was hiding in a neighborhood in Fort Worth. A surveillance team made up of Denton police officers, Fort Worth police officers, and Texas Rangers apprehended him after they found him hiding behind a tree.

3

The day after Appellant's arrest, the man who owned the property where Appellant had been arrested called the police and reported that he had found a loaded gun hidden in a trash bag inside the ice cream cart he used in his business. The gun was shown to be the same gun that fired the bullet into Becky's brain. Ammunition for that gun was found during the search of Appellant's rented room down the street from the spot where he was arrested. The police recovered Becky's car about half a mile from Appellant's rented room.

In May 2006, Becky's former landlord, Esmeralda Diaz, an assistant probation officer with Denton County Community Supervision Department, found a black suitcase in a storage shed behind the house Becky was renting from Diaz and her husband at the time of Becky's death. Diaz testified that the shed was kept locked and that only she and her husband had the keys to it, so it was not accessible to tenants. But Diaz noticed that a window had been broken out in the storage shed. She had looked inside the shed not long after Becky's death and had seen nothing. But after seeing the broken window in May 2006, she and her husband entered the shed and discovered a black luggage bag under a desk in the shed. Diaz realized that the bag did not belong to them, so she and her husband opened it and discovered neatly folded clothing that she described as male clothing; picture identification cards;

4

pictures of Becky and Appellant; pictures of Appellant and an older woman; a cell phone with pictures of Becky, her children, and Appellant on it; and letters between Appellant and Becky. Rather than keep the bag or turn it over to the police department, and rather than notify the district attorney's office, she threw the bag and its contents away.

Appellant argues in his first and second points that the evidence regarding the discovery of the bag and its contents was not properly connected to him and consequently not relevant and also that the testimony was more prejudicial than probative.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.[2] Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.[3] Preservation of

[2] ... Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999).

[3] ... Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

error is a systemic requirement that this court should review on its own motion.[4]

A party must continue to object each time objectionable evidence is offered.[5]   A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling.[6]   This rule applies whether the other evidence was introduced by the defendant or the State.[7]

Appellant argues that he objected three times to the admission of Diaz's testimony relating to the luggage and its contents.   Appellant is only partially correct.   The first relevance objection was to what Diaz saw when she opened the door to the storage shed.   Her answer was that she saw nothing.   The second relevance objection occurred as follows:

---

[4] *... Archie v. State,* 221 S.W.3d 695, 698 (Tex. Crim. App. 2007); *Jones v. State,* 942 S.W.2d 1, 2 n.1 (Tex. Crim. App. 1997).

[5] *... Fuentes v. State,* 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied,* 528 U.S. 1026 (1999); *Ethington v. State,* 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991).

[6] *... Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Johnson v. State,* 803 S.W.2d 272, 291 (Tex. Crim. App. 1990), *cert. denied,* 501 U.S. 1259 (1991), *overruled on other grounds by Heitman v. State,* 815 S.W.2d 681 (Tex. Crim. App. 1991).

[7] *... Leday,* 983 S.W.2d at 718.

Q. Okay. When you went into this storage building earlier this year, tell the jury what you observed and in what fashion.

[Appellant objects to the relevance, and the objection is overruled.]

A. We observed that a window had been broken out, and so we went in to see what was still there. And we went in and then my husband decided that we were going to clean it out so that we could move one of the storage buildings.

There is no reference in connection with either of these objections to the luggage in question or to its contents.

The third objection was a little more on point. The question was, "Okay. And what is it that you discovered? Physically what did you see?" Appellant objected on the grounds of relevance, and the objection was overruled. Diaz testified, "We discovered a black luggage bag that had clothes in there." That was the last relevance objection Appellant lodged. At no time did Appellant lodge an objection to the prejudicial value of the testimony. After the last objection, Diaz continued to testify about the black bag. She described where it was hidden. She described the bag in detail. She described its contents in detail. There was no further objection until Appellant objected that a question was leading, and that objection was also overruled. Diaz continued to describe the contents of the bag without objection. Appellant then began to ask Diaz questions about the contents of the bag.

7

Because Appellant did not object to each question regarding the bag and its contents or request a running objection and obtain a ruling, Appellant has not preserved either the issue of relevance or the issue of prejudice for appellate review. We overrule Appellant's first and second points.

In Appellant's third point, he argues that if we do not consider the improperly admitted evidence, then the remaining evidence is factually insufficient to support his conviction. Appellant does not otherwise challenge the sufficiency of the evidence. We note that this court has already held,

> In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. Relying on the Texas Court of Criminal Appeals rationale in *Moff*, . . . as well as the holdings of our sister courts in Houston and Amarillo, we hold that "all the evidence" means all admitted evidence, even evidence improperly admitted.[8]

Because Appellant does not otherwise argue that the evidence is factually insufficient, and we have not held the challenged evidence inadmissible, we do not reach the merits of his third point.

---

[8] *... Klein v. State*, 191 S.W.3d 766, 775 (Tex. App.—Fort Worth 2006) (citations omitted), *rev'd on other grounds*, 273 S.W.3d 297 (Tex. Crim. App. 2008).

Having overruled Appellant's dispositive points, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 1, 2009